UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FREEDOM MORTGAGE CORPORATION,

                Plaintiff,

          -against-

NORMAN J. POWELL,

                Defendant.
------------------------------------------------------------X

**<u>REPORT AND RECOMMENDATION</u>**
18 CV 4265 (ENV)
(PCG)

On July 27, 2018, plaintiff Freedom Mortgage Corporation ("Freedom Mortgage" or "plaintiff") commenced this action against defendant Norman J. Powell, seeking to foreclose on a mortgage encumbering the property located at 9249 244th Street, Floral Park, New York 11001 (the "Subject Property"), pursuant to New York Real Property Actions and Proceedings Law ("RPAPL"), §1301 <u>et seq</u>.

Despite proper service, defendant failed to file an answer or otherwise respond to the Complaint and thereafter, on June 5, 2019, the Clerk of Court entered a default in favor of plaintiff. (Dkt. No. 12). On July 30, 2019, plaintiff moved for default judgment (Dkt. No. 13), and the motion was referred to United States Magistrate Judge Cheryl L. Pollak to prepare a Report and Recommendation (Docket Order, dated August 16, 2019). After numerous intervening proceedings, plaintiff filed its most recent motion for default judgment on May 2, 2025 (Dkt. No. 80), which was referred to United States Magistrate Judge Cheryl L. Pollak on May 5, 2025, to prepare a Report and Recommendation. (Docket Order, dated May 5, 2025). The case was reassigned to the undersigned on January 15, 2026.

For the reasons set forth below, the Court respectfully recommends that plaintiff's motions for default judgment and for judgment of foreclosure and sale be granted and that

1

plaintiff be awarded damages in the amount of $571,975.19 reflecting $395,417.70 in outstanding unpaid principal balance due under the Mortgage and Note, $94,302.23 in past-due interest, $12,180.89 in Hazard Insurance Disbursements, $65,690.37 in Tax Disbursements, and $4,384 in other fees and disbursements, in addition to pre-judgment and post-judgment interest.

STATEMENT OF FACTS

Plaintiff Freedom Mortgage alleges that it is incorporated under the laws of the State of New Jersey, with its principal place of business located at 907 Pleasant Valley Avenue, Suite 3, Mount Laurel, N.J. 08054.  (Compl. ¶ 2).[1]  Defendant Norman J. Powell, the owner of the Subject Property, is alleged to be a citizen of New York.  (Id. ¶ 3).  Plaintiff alleges that on or about November 6, 2015, Powell executed and delivered a Note and Mortgage in the amount of $408,396.00, secured by the Subject Property.  (Id. ¶¶ 7, 8, Sched. A).[2]  The loan is backed by the Department of Veterans Affairs ("VA"), though plaintiff asserts that Defendant Powell is not in active military service as defined in the Servicemembers' Civil Relief Act. (Id. Sched. A; Affidavit on Service Members Civil Relief Act, Dkt. No. 79).  The Mortgage was assigned to Freedom Mortgage on April 24, 2018,  and recorded in the office of the Nassau County Clerk on June 20, 2018 (Instrument Number 2018-53875).  (Compl. ¶ 8; Certificate of Merit, Dkt. 1-3, Ex. A; Tracy Aff., ¶ 5, Ex. Assignment).  Plaintiff alleges that it is the owner and holder of Note and Mortgage or has been delegated authority to institute this foreclosure action by the owner and holder of the subject Note and Mortgage.  (Compl. ¶ 2, Sched. A).

---

[1] Citations to "Compl." refer to plaintiff's Complaint filed July 27, 2018.  (Dkt. No. 1).
[2] Although the Complaint does not contain the name of the initial lender, the Note, which is attached as Schedule A to the Complaint, lists the original lender as Sun West Mortgage Company, Inc. ("Sun West"), a California corporation, and indicates that defendant Powell executed the Note to Sun West on November 6, 2015. (Compl., Sched. A).

According to the Complaint, defendant Powell failed to make payments in accordance with the terms of the Note and Mortgage by failing to make the payment due August 1, 2017, and failing to make any subsequent payments.  (Id. ¶ 9).  At the time of the Complaint, plaintiff alleged that there was a principal balance owed on the Mortgage of $395,417.70, along with interest accruing from the date of July 1, 2017 at the rate of 3.75%.  (Id. ¶ 10).  In addition, the Complaint alleged that plaintiff was owed late charges, any monies advanced for taxes, assessments, insurance, maintenance, and preservation of the Subject Property, as well as any costs, expenses, and attorney's fees for foreclosure.  (Id.)  Plaintiff alleges that it has complied with all of its contractual obligations, including serving defendant with 90-day notices to cure, and has complied with all of the provisions of RPAPL §§ 1304, 1306, and Sections 595a and 6-1 of the Banking Law.  (Id. ¶ 12).

Plaintiff asserts that due to the default, defendant owes the unpaid principal amount due under the Note, together with all accrued and unpaid interest, late charges, and other fees and costs permitted by the Note and the Mortgage.  (Id., Wherefore Clause).  Plaintiff also seeks foreclosure and the sale of the Subject Property, and that plaintiff be paid out of the sale proceeds.  (Id.)  The Complaint further seeks various conditions to be imposed should the action proceed to a judgment of foreclosure and sale.  (Id.)

PROCEDURAL HISTORY

On January 21, 2020, this Court issued an Order asking the plaintiff to clarify certain aspects of its first request for default judgment and damages, filed at Dkt. No. 13, giving the parties an opportunity to submit additional papers and to request a hearing.  (Electronic Order, dated January 21, 2020).  Thereafter, on February 13, 2020, this Court issued a Report and Recommendation, recommending that the case be stayed and the plaintiff's motion for default

judgment be denied without prejudice to renew pending a decision by the New York Court of Appeals on two questions certified to the Court by the Second Circuit in CIT Bank N.A. v. Schiffman, 948 F.3d 529 (2d Cir. Jan. 28, 2020). (Dkt. No. 20). The question relevant to the case at hand was "[w]here a foreclosure plaintiff seeks to establish compliance with RPAPL § 1304 through proof of a standard office mailing procedure, and the defendant both denies receipt and seeks to rebut the presumption of receipt by showing that the mailing procedure was not followed, what showing must the defendant make to render inadequate the plaintiff's proof of compliance with § 1304?" CIT Bank N.A. v. Schiffman, 948 F.3d at 538. In its Report and Recommendation, the Court explained that "Freedom's papers on their face raise questions regarding its compliance with RPAPL § 1304, which the Court of Appeal's answer to the certified question may clarify." (Dkt. No. 20, at 4).

On June 16, 2021, plaintiff's counsel submitted a letter to the Court indicating that on March 30, 2021, the New York State Court of Appeals issued its decision in the Schiffman case, CIT Bank N.A. v. Schiffman, 36 N.Y.3d 550, 168 N.E.3d 1138, 145 N.Y.S.3d 1 (2021), after which the Second Circuit decided in favor of plaintiff in Schiffman. CIT Bank N.A. v. Schiffman, 999 F.3d 113 (2d Cir. 2021).[3] (See Dkt. No. 24).

Following the Schiffman decisions, plaintiff requested that the Court lift the stay and decide plaintiff's motion for default judgment. (Id.) In that same letter, however, plaintiff acknowledged that the loan had been backed by the VA, and a foreclosure moratorium on federally backed mortgage loans (including those guaranteed or insured by the Department of

---

[3] The Second Circuit held that deviating from a standard procedure relating to § 1304 notices by creating the notice later than upon default was immaterial to the question of whether the notice was properly prepared and mailed, and that, to rebut a presumption of proper mailing as part of a routine office practice, defendants must prove a "*material* deviation from an aspect of the office procedure that would call into doubt whether the notice was properly mail." Schiffman, 999 F.3d. at 118.

Veterans Affairs), part of the Coronavirus Aid, Relief, and Economic Security Act (the CARES Act), had been extended until July 31, 2021.[4] (Id.) The CARES Act also included a provision permitting borrowers to request forbearance on the mortgage loan and provided that during a period of forbearance, no interest "beyond the amounts scheduled or calculated as if the borrower made all contractual payments on time" would accrue. Pub. L. No. 116-136, § 1102, 134 Stat. 281 (2020), codified at 15 U.S.C. § 9056.

On January 31, 2022, plaintiff resubmitted its Motion for Default Judgment of Foreclosure and Sale. (Dkt. Nos. 28-30). On November 30, 2023, the VA requested that mortgage servicers place a foreclosure moratorium on all VA-guaranteed loans (see Dkt. No. 69, attaching Veterans Benefits Administration Circular 26-23-25)), and on August 28, 2024, the district court adopted this Court's recommendation that the plaintiff's motion be denied without prejudice to renew once the moratorium expired (Docket Order, dated August 28, 2024 (adopting Dkt. No. 74)).[5] After the expiration of the moratorium on December 31, 2024, plaintiff submitted its renewed Motion for Default Judgment on May 2, 2025 (Dkt. Nos. 80-82), and the motion was referred to United States Magistrate Judge Cheryl L. Pollak on May 5, 2025.

---

[4] On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (the CARES Act), Pub. L. No. 116-136, 134 Stat. 281 (2020), which, among other things, provided certain protections for borrowers with federally backed mortgage loans who were experiencing financial hardship due to COVID-19, including instituting a moratorium that prohibited loan servicers from initiating any judicial or non-judicial foreclosure process for the 60-day period beginning March 18, 2020. The VA then extended the foreclosure moratorium through August 31, 2020 for Veteran borrowers whose properties were secured by VA-guaranteed loans. The moratorium was extended several times, most recently expiring as of July 31, 2021.

[5] During the period that the VA Circular 26-23-25 moratorium was in effect, this Court held multiple conferences with plaintiff's counsel and the defendant's wife, who, although not a defendant here or a signatory to the loan documents, was attempting to negotiate a loan modification agreement in an effort to resolve the case and avoid foreclosure. (See, e.g., July 15, 2022 Minute Entry; October 14, 2022 Minute Entry; February 9, 2023 Minute Entry; Dkt. Nos. 41, 43, 48). In 2023, defendant applied for funding from the Homeowners Assistance Fund ("HAF") in an effort to obtain funds to pay the arrearage owed and reinstate the loan. (See Dkt. No. 61). In a status report dated April 30, 2024, plaintiff informed the Court that "no loss mitigation review" was pending regarding the underlying loan. (See Dkt. No. 71).

(Docket Order, dated May 5, 2025).  The case was reassigned to the undersigned on January 15, 2026.

On October 20, 2025, this Court issued an Order giving the parties an opportunity to supplement the papers before the Court.  (Dkt. No. 84).  The Court has received nothing from defendant and thus proceeds to consider the motion for default judgment.

DISCUSSION

I.      Default Judgment

After defendant failed to file an Answer or otherwise respond to the Complaint, plaintiff obtained a default from the Clerk of Court (Dkt. No. 12) and filed the instant motion for default judgment. (Dkt. No. 80).

A.      Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Rule 55 sets forth a two-step process for an entry of default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of the Court automatically enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  See id. Second, after the Clerk of the Court enters default against a party, if that party fails to appear or otherwise moves to set aside the default pursuant to Rule 55(c), the court may enter default judgment.  See Fed. R. Civ. P. 55(c).

When a defendant defaults, the defendant is deemed to have admitted every well-pleaded allegation of the complaint, "except those relating to damages."  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); Wing v. East River Chinese Rest., 884 F. Supp. 663,

6

669 (E.D.N.Y. 1995); see also Hernandez Gomez v. 4 Runners, Inc., 769 F. App'x 1, 2 (2d Cir. 2019) (summary order).  The Court, however, must review the allegations in the complaint to determine if the elements of each claim have been adequately pleaded.  See Allstate Ins. Co. v. Tapper, No. 14-CV-5410, 2015 WL 6869702, at *2 (E.D.N.Y. Nov. 9, 2015).

In determining whether a default judgment should be entered, the Second Circuit has cautioned that a default judgment is an extreme remedy that "must remain a weapon of last, rather than first, resort."  Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard."  Enron Oil Corp., 10 F.3d at 95–96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party.  Id. Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because the defendant is in default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The court has significant discretion and may consider a number of factors in deciding whether to grant a default judgment.  These factors include:  (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing the defendant on notice; and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment.  See Hirsch v. Innovation Int'l,

Inc., No. 91 Civ. 4130, 1992 WL 316143, at \*2 (S.D.N.Y. Oct. 19, 1992); Fed. R. Civ. P. 54(c) (stating "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at \*4–5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages).  Additionally, a court may consider whether the facts alleged in the complaint state a valid cause of action, whether there are unresolved questions regarding material issues of fact as to liability or damages, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant.  See Au Bon Pain Corp., 653 F.2d at 65; 10A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2685 (4th ed. 2025) (discussing factors). Where a defendant does not even oppose the motion for default judgment, the Court may find that the default is "crystal clear."  See Hirsch, 1992 WL 316143, at \*2.

      B.      Default Determination

Based upon a review of the allegations in the Complaint, which are undisputed at this time, and for the reasons stated herein, the Court finds that plaintiff has alleged a basis for finding liability sufficient to warrant entry of a default judgment in its favor.

      1. Foreclosure Actions

Under New York law, a mortgage is "'merely security for a debt or other obligation.'" United States v. Freidus, 769 F. Supp. 1266, 1276 (S.D.N.Y. 1991) (quoting 77 N.Y. Jur. 2d, Mortgages § 2 at 374); see also Rivera v. Blum, 98 Misc. 2d 1002, 1008, 420 N.Y.S.2d 304, 308 (N.Y. Sup. Ct. 1978) (noting that a mortgage is the security for a debt that represents a lien on the mortgaged property).  The "'mortgagor is bound by the terms of his contract as made[,]'"

and, in the event of a default, cannot be relieved from the default unless waived by the mortgagee, or where there is "'estoppel, or bad faith, fraud, oppressive or unconscionable conduct'" on the part of the mortgagee.  Freidus, 769 F. Supp. at 1276 (quoting Nassau Tr. Co. v. Montrose Concrete Prods. Corp., 56 N.Y.2d 175, 183, 436 N.E.2d 1265, 1269, 451 N.Y.S.2d 663, 667 (1982)).

In actions to foreclose upon a mortgage, the plaintiff must demonstrate three elements: (1) the existence of the mortgage and mortgage note, (2) ownership of the mortgage, and (3) the defendant's default in payment on the loan.  Campaign v. Barba, 23 A.D.3d 327, 327, 805 N.Y.S.2d 86, 86 (2d Dep't 2005); see also Secretary of U. S. Dep't of Hous. & Urb. Dev. v. Robedee ex rel. Suffolk Cty. Dep't of Soc. Servs., No. 22-CV-00809, 2022 WL 18284844, at *4 (E.D.N.Y. Dec. 5, 2002), report and recommendation adopted, No. 22CV0809, 2022 WL 17850116 (E.D.N.Y. Dec. 22, 2022); Freidus, 769 F. Supp. at 1277 (holding that foreclosure actions require "proof of the existence of an obligation secured by a mortgage, and a default on that obligation").  Once the plaintiff submits the mortgage, the unpaid note, and evidence of the default, it has satisfied its prima facie entitlement to judgment, see Fleet Nat'l Bank v. Olasov, 16 A.D.3d 374, 374, 793 N.Y.S.2d 52, 52 (2d Dep't 2005) (citing cases), and the burden shifts to the defendant to demonstrate that there is a triable issue of fact with respect to the merits of the defenses and/or counterclaims.  Id.; see also Gustavia Home, LLC v. Rutty, 720 F. App'x 27, 28 (2d Cir. 2017) (summary order); U.S. Bank Tr. Nat'l Ass'n Tr. v. Butti, 16 A.D.3d 408, 408, 792 N.Y.S.2d 505, 506 (2d Dep't 2005); Republic Nat'l Bank of N.Y. v. O'Kane, 308 A.D.2d 482, 482, 764 N.Y.S.2d 635, 635 (2d Dep't 2003).

2.   <u>Foreclosure Against Borrower Norman J. Powell Is Appropriate</u>

In this case, plaintiff has alleged in the Complaint that it is the current holder of the Note and Mortgage issued originally by Sun West.  (Compl. ¶ 2).  Although the Note and Mortgage were originally issued to Sun West, the exhibits attached to the Complaint demonstrate that the Note and Mortgage were transferred from Sun West to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for the lender on November 6, 2015, and then assigned to plaintiff Freedom Mortgage by a Corporate Assignment of Mortgage dated April 23, 2018.  (<u>Id.</u>, Ex. 1-3).  Plaintiff has further alleged that the Mortgagor is in default on its loan, and that plaintiff has complied with all relevant provisions of the RPAPL and the New York Banking Law.  (Compl. ¶¶ 9, 12).

In addition to the allegations in the Complaint, which have not been refuted, plaintiff has submitted copies of the duly executed Note and Mortgage, the Assignment of Mortgage, and the Affidavit of Plaintiff, executed by Erica D. Tracy, FCL Specialist III, attesting to the authenticity of the documents and certifying compliance with the requirements of the RPAPL.  (<u>See</u> Affidavit of Plaintiff (Dkt. No. 82-10) ("Tracy Aff.")).  Ms. Tracy also submitted an "Affidavit of Mailing of 90 Day Notice and Notice of Default," which details Freedom Mortgage's processing and mailing procedures and states that Freedom Mortgage mailed the 90 Day Notice and a list of five housing counseling agencies to the last known address of defendant, which was the Subject Property address.  (Tracy Aff. of Mailing, Dkt. No. 82-11).  This further establishes compliance with RPAPL § 1304.  Plaintiff has also provided a Statement of Damages, a proposed Default Judgment of Foreclosure and Sale, and Memorandum of Law in support of plaintiff's renewed motion for default judgment and judgment of foreclosure and sale.  (Dkt. Nos. 81, 82-12, 82-13).

The allegations in the Complaint, which establish the existence of the mortgage held by plaintiff, along with the unpaid note, and evidence of the default, are sufficient to satisfy plaintiff's prima facie entitlement to judgment.  While the law shifts the burden to defendants to demonstrate that there is a triable issue of fact, here, the defendant has failed to contest the claims.  In this case, it is beyond dispute that the defendant is in default since he has failed to file an Answer to the Complaint, failed to oppose plaintiff's motion for a default judgment, failed to respond to this Court's Order relating to the calculation of damages, and failed to challenge the Court's entry of a default.  Given the numerous opportunities afforded the defendant, the Court finds no compelling reason to delay further and respectfully recommends that the District Court grant plaintiff's motion for default judgment of foreclosure.

II.    Appointment of Referee, Payment of Referee, and Payment of Sums Expended in the Sale

In its proposed Judgment of Foreclosure and Sale, filed in conjunction with its default judgment motion, plaintiff requests that the Court designate a referee, Mark S. Ricciardi, Esq., to conduct the foreclosure sale and that the referee be paid $500 from the proceeds of the sale.  (See Proposed J. at 2).

A court may appoint a referee to effectuate a foreclosure and compute the amount due to the plaintiff under the Note and Mortgage when a defendant defaults and fails to answer the complaint.  See RPAPL § 1321(1); § 1351(1); see also Windward Bora, LLC v. Brown, No. 21-CV-3147, 2022 WL 875100, at *5 (E.D.N.Y. Mar. 24, 2022).   "[C]ourts routinely appoint referees to effectuate the sale of foreclosed properties."  U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Christian, No. 19 CV 427, 2020 WL 3918566, at *6 (E.D.N.Y. Feb. 25, 2020) (citing cases), report and recommendation adopted, No. 19-CV-00427, 2020 WL 3893015 (E.D.N.Y. July 10, 2020), and order that the referee be paid from the proceeds of the sale. See

11

Windward Bora, LLC v. Brown, 2022 WL 875100, at *6 (appointing Susan Ellen Rizos, Esq., pursuant to proposed judgment that provides $750.00 fee); cf. Windward Bora LLC v. Valencia, 2022 WL 872506, at *1 (appointing a different individual as referee in a foreclosure action for the fee of $750.00). However, courts are generally not permitted to "award damages that exceed what the plaintiff requested in its complaint." Windward Bora v. Castiglione, No. 18 CV 1766, 2019 WL 2435670, at *5 (E.D.N.Y. Jan 10, 2019) (citing Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 121 (E.D.N.Y. 2013)). Nevertheless, courts have found that the phrase "expenses of such sale" in a complaint "logically include[d]" the reimbursement of foreclosure and sale expenses sought in a proposed judgment. Windward Bora LLC v. Baez, No. 19-CV-5698, 2020 WL 4261130, at *6 (E.D.N.Y. July 24, 2020) (citing cases).

Having already determined that plaintiff is entitled to a judgment of foreclosure, the Court respectfully recommends the appointment of Mark S. Ricciardi, Esq., as referee to effectuate the foreclosure and sale of the Subject Property as one parcel, and that plaintiff be awarded sums expended in the sale. The Court further respectfully recommends that Mark S. Ricciardi, Esq., be paid $500.00, plus the costs of completing the sale, from the proceeds of the sale.

III.   Default Damages

Plaintiff seeks entry of a judgment foreclosing on the loan and awarding plaintiff the aggregate amount of $590,068.89. (Tracy Aff. ¶ 12). According to Ms. Tracy, this requested amount consists of $395,417.70 in unpaid principal, $114,535.69 in unpaid interest as of March 22, 2025, $1,045.15 in accrued late charges, $12,180.89 in Hazard Insurance Disbursements, $65,690.37 in Tax Disbursements, $1,510.00 in Property inspection costs, $1,150 in BPO, and $135 in Title Search expenses, with a credit of $1,595.91 for an escrow advance. In addition, as

12

set forth in the Statement of Damages, plaintiff seeks $4,385.82 in filing fees, skip trace fees, tax map verification fees, paid for searches, service and postal costs.  (Dkt. No. 82-12).  Plaintiff does not appear to be seeking attorneys' fees incurred in connection with this litigation.  (Pl.'s Mem. of Law at 9-10).

      A.      <u>Legal Standard</u>

When a default judgment is entered, the defendants are deemed to have admitted all well pleaded allegations in the Complaint pertaining to liability.  See <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992), <u>cert. denied</u>, 506 U.S. 1080 (1993); <u>Montcalm Publ'g Corp. v. Ryan</u>, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing <u>United States v. Di Mucci</u>, 879 F.2d 1488, 1497 (7th Cir. 1989)); <u>Au Bon Pain Corp.</u>, 653 F.2d at 65.  However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendants have the opportunity to contest the claimed damages.  See <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d at 158.  That said, while "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." <u>Fustok v. Conticommodity Servs., Inc.</u>, 122 F.R.D. 151, 156 (S.D.N.Y. 1988), <u>aff'd</u>, 873 F.2d 38 (2d Cir. 1989). Rather, "the court may rely on detailed affidavits or documentary evidence . . . to evaluate the proposed sum." <u>Id.</u> (holding that "it was not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment").

As previously mentioned, the court may appoint a referee to compute damages due to the plaintiff under the Note and Mortgage.  RPAPL § 1321(1); <u>see</u> <u>Greystone Bank v. Skyline Woods Realty, LLC</u>, 817 F. Supp. 2d 57, 65 (N.D.N.Y. 2011).  However, RPAPL § 1321(1) does not require a court to appoint a referee.  <u>See id.</u> ("If the defendant fails to answer within the time

13

allowed or the right of the plaintiff is admitted by the answer, upon motion of the plaintiff, the court shall ascertain and determine the amount due, or direct a referee to compute the amount due to the plaintiff . . . ."); see also Windward Bora, LLC v. Brown, 2022 WL 875100, at *5 (computing amount due on the note without appointing a referee).  This Court issued an Order directing the parties to submit papers in support of their damage calculations.  Plaintiff submitted evidence in support of its damage calculations, whereas the defendant did not submit any papers. Since the defendant is in default, plaintiff's evidence on damages is undisputed.

B.    Damages Calculation

1)    Principal

According to the Affidavit of Erica Tracy, plaintiff is owed $395,417.70 in unpaid principal on the mortgage as of March 22, 2025.  (Tracy Aff. ¶ 12).  Plaintiff has attached the Payment History Summary for the loan, showing that no payments have been made since the payment made on July 1, 2017, leaving the unpaid balance as $395,417.70.  (Id.)  Plaintiff alleges that defendant failed to tender the installment which became due and owing on August 1, 2017, and failed to tender all subsequent installments.  (Id. ¶ 12)

Having reviewed the plaintiff's submissions in support of its motion for damages, the Court respectfully recommends that plaintiff be awarded the unpaid principal amount owed on the Mortgage in the amount of $395,417.70.

2)    Interest

Plaintiff seeks an award of unpaid interest due under the terms of the Loan in the amount of $114,535.69 from July 1, 2017 until March 22, 2025.  (Tracy Aff. ¶ 12).  According to the Note, the annual rate of interest was 3.750%.  (Id.; Compl., Sched. A).  Applying the 3.750% annual interest rate to the unpaid principal balance of $395,417.70, interest accrues at $40.63 per

14

day.[6]  However, the mortgage was backed by the Department of Veterans Affairs and subject to the CARES Act foreclosure moratorium, which included a provision allowing for forbearance of "interest beyond the amounts scheduled as calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage contract."  15 U.S.C. § 9056(b)(3). The CARES Act went into effect on March 18, 2020, id., and the VA extended the moratorium several times until its expiration on July 31, 2021.  U.S. Dep't of Veterans Affs., Circular 26-21-10, Relief for Borrowers Affected by COVID-19 (June 25, 2021). See also, U.S. Dep't of Veterans Affs., Information for VA Home Loan Borrowers During COVID-19, *available at* https://benefits.va.gov/homeloans/cares-act-frequently-asked-questions.asp#:~:text=There%20are%20multiple%20protections%20on,eviction%20moratorium%20is%20in%20effect ("The extension for the moratorium on foreclosures ended on July 31, 2021").  Even where a borrower did not claim hardship under the CARES Act, this District has declined to award interest for the period the moratorium was in place where the mortgage was subject to the CARES Act moratorium and the moratorium impacted the litigation timeline.  See Freedom Mortgage Corp. v. King, 19-CV-4833, 2023 WL 3494738, at *4-5 (E.D.N.Y. May 17, 2023) (finding that plaintiff was "not entitled to prejudgment interest for the period that the CARES Act foreclosure moratorium was in place," despite borrower not claiming hardship under the CARES Act).

A review of the record indicates that in this case, as in King, the moratorium impacted the timeline of the case.  Plaintiff informed the Court in a status report dated June 16, 2021 that the subject loan was backed by the VA and that a moratorium was in effect.  (See Status Report, Dkt.

---

[6] "Daily interest is calculated as follows: daily interest rate = (outstanding principal * interest rate per annum)/365 days." CIT Bank, N.A. v. Seeram, No. 16 CV 2608, 2017 WL 8220204, at *5 n.11 (E.D.N.Y. Feb. 15, 2017), adopted by, 2018 WL 1308003 (E.D.N.Y. Mar. 13, 2018) (citation omitted). Here, the daily interest rate is calculated as follows: ($395,417.70* .0375) / 365 = $40.63 per day.

No. 24).  The moratorium expired on July 31, 2021.  Although defendant did not establish that they requested forbearance, the litigation of this case was delayed in part because of the moratorium and, as such, the Court respectfully recommends that plaintiff not be awarded interest for the timeframe of the moratorium.[7]

The plaintiff is thus entitled to prejudgment interest at a rate of $40.63 per day from July 1, 2017 through March 22, 2025, with the exception of the period from March 18, 2020 until July 31, 2021, amounting to a total of $94,302.23.  Accordingly, the Court respectfully recommends that plaintiff be awarded damages in past-due interest in the amount of $94,302.23 and *per diem* pre-judgment interest in the amount of $40.63 per day from May 23, 2025 until judgment is entered.  See Windward Bora, LLC v. Brown, 2022 WL 875100, at *6 (awarding *per diem*, pre-judgment interest starting from August 13, 2021 where plaintiff had calculated the amount of alleged interest due through August 12, 2021).

Finally, a plaintiff is also entitled to an award of post-judgment interest, pursuant to 28 U.S.C. § 1961(a), on damage awards issued by a district court.  See Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008).  Thus, the Court also respectfully recommends that plaintiff be awarded post-judgment interest at the federal statutory rate from the date judgment is entered until it is paid.  See Windward Bora, LLC v. Brown, 2022 WL 875100, at *6 (awarding post-judgment interest pursuant to 28 U.S.C. § 1961(a) in granting motion for default judgment of foreclosure and sale).

---

[7] The Court notes that defendant's mortgage was also subject to a non-CARES Act moratorium based on VA Circular 26-23-25, but that moratorium did not include a forbearance provision on accrual of interest.  As such, plaintiff may recover prejudgment interest during the period this moratorium was in effect.

3)    Other Costs and Expenses

In her Affidavit, Ms. Tracy also provides a breakdown of the Hazard Insurance disbursements paid, along with the date of payment and reference to Exhibit 4 showing such payments. (Tracy Aff. ¶ 12). She similarly has provided a breakdown of the tax disbursements paid and the dates of payment with reference to the Exhibit showing such payments. (Id.) Accordingly, it is respectfully recommended that plaintiff be awarded $12,180,89 in Hazard Insurance Disbursements, and $65,690.37 in tax disbursements. In addition, Ms. Tracy has provided invoices for foreclosure searches owed to Advantage Foreclosure (Ex. 82-12), an invoice for $715 in process server fees, including out of state service charges, an invoice for $355 in tax verification fees, and Nassau County Clerk's Office filing fees. (Ex. 82-12). In addition, the Court takes judicial notice of the filing fee which is reflected on the docket. (Dkt. No. 1). Accordingly, the Court respectfully recommends that plaintiff be awarded $4,385.82 in fees and disbursements authorized under the loan documents.

The Late Charges of $1,045.15 listed in Ms. Tracy's affidavit and on the Statement of Damages appear in one of the documents attached to Ms. Tracy's affidavit, Tracy Aff. at 61, 72, but it is unclear how plaintiff calculated the amount it is seeking, given that subsequent pages list other late charges balances. Tracy Aff. at 79. Similarly, while one of the attached documents references "Prop Inspection Fee[s]" throughout the document, it is unclear how plaintiff arrived at the $1,510 amount it is requesting. See generally Tracy Aff. at 59-79. Plaintiff also seeks $1,150 for a Broker Price Opinion ("BPO") and $135 for a Title Search, but its submissions include no evidence of such fees. (Tracy Aff. ¶ 12; Statement of Damages). As such, the court recommends that plaintiff's request for these fees be denied with leave to supplement its request for late charges, property inspection fees, the Broker Price Opinion, and the title search with

17

appropriate documentation of the fees and charges.  See Freedom Mortgage Corp. v Phillip, No. 19 CV 1215, at Electronic Order dated Apr. 8, 2020 (denying without prejudice plaintiff's unsubstantiated request to award $5,017.60 in unpaid hazard insurance disbursements, tax disbursements, and PMI/MIP); Freedom Mortg. Corp. v. Elmore-Hernandez, No. 18-cv-1840, 2019 WL 2779320, at *5 (E.D.N.Y. May 8, 2019), adopted by, 2019 WL 2775620 (E.D.N.Y. July 2, 2019) (denying without prejudice plaintiff's unsubstantiated request to award $5,356.20 for taxes, insurance costs, and property inspections and preservation costs).

## CONCLUSION

In summary, having reviewed plaintiff's submissions in support of plaintiff's motion for default judgment and damages, as well as plaintiff's Proposed Judgment, the Court respectfully recommends that plaintiff's default judgment motion be granted.  The Court respectfully recommends that plaintiff be awarded damages as follows: $571,975.19 consisting of (1) $ 395,417.70 in unpaid principal; (2) $94,302.23 in past-due interest from July 1, 2017 through March 22, 2025, excluding the period between March 18, 2020 and July 31, 2021; (3) per diem interest of $40.63, starting from March 23, 2025 until judgment is entered; (4) post-judgment interest at the statutory rate; (5) $12,180.89 in Hazard Insurance Disbursements; (6) $65,690.37 in Tax Disbursements; and (7) $4,384 in other fees and disbursements.

The Court further respectfully recommends that the foreclosure and sale of the Subject Property proceed as set forth in the Proposed Judgment, under the direction of Mark S. Ricciardi, Esq., as referee.  The Court further respectfully recommends that the referee be paid $500.00 from the proceeds of the sale, and that plaintiff be awarded from the sale any sums expended for taxes, assessments, water rates, interest and penalties accrued, and any additional costs for the

18

expenses of the sale and the advertising expenses as shown on the bills presented to the referee and certified by him.

The Court further respectfully recommends that plaintiff's request for $1,045.15 in Late Charges, $1,510 in Property Inspections/Preservation costs, $1,150 for BPO, and $135 for Title Search be denied without prejudice with leave to supplement with supporting documents within fourteen (14) days of this Report. If plaintiff files the supporting documents, the Court respectfully recommends that plaintiff be awarded the sums reflected in those supporting documents.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiff is Ordered to serve a copy of this Report and Recommendations on defendant at his last known address promptly via overnight delivery or courier and file proof of service immediately thereafter.

**SO ORDERED.**

Dated: February 26, 2026
     Brooklyn, New York

/s/ Peggy Cross-Goldenberg

PEGGY CROSS-GOLDENBERG
United States Magistrate Judge
Eastern District of New York